NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210606-U

NO. 4-21-0606

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 1, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| DEMARKUS A. DIGGS, | ) | No. 21CF569 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Randall B. Rosenbaum, |
| | ) | Judge Presiding. |

JUSTICE BRIDGES delivered the judgment of the court.
Presiding Justice Knecht and Justice Doherty concurred in the judgment.

**ORDER**

¶ 1     *Held*:  (1) The trial court did not err where defendant forfeited his claim of an improper other-crimes instruction; (2) trial counsel was not ineffective for failing to request a limiting instruction; and (3) defendant's sentence of 20 years' imprisonment was not an abuse of discretion.

¶ 2     After a jury trial, defendant, Demarkus A. Diggs, was convicted of being an armed habitual criminal (AHC) (720 ILCS 5/24-1.7(a) (West 2020)), based on his possession of a firearm while having two prior felony convictions. The trial court sentenced him to 20 years' imprisonment. On appeal, defendant contends (1) the court erred by improperly instructing the jury it could consider defendant's two prior felony convictions "along with all the other evidence," (2) alternatively, defense counsel was ineffective for failing to request a limiting instruction regarding defendant's convictions, and (3) his sentence was excessive. We affirm.

¶ 3                              I. BACKGROUND

¶ 4        The State charged defendant with AHC (*id.*) in that he possessed a firearm and had been convicted of aggravated robbery in Cook County case No. 17-CR-0070101 and residential burglary in Cook County case No. 16-CR-0973301. The State also filed a notice of eligibility for an extended-term sentence based on defendant's possession of a laser sight attached to the firearm in question.

¶ 5        Before trial, defense counsel filed a motion *in limine* requesting the State be barred from introducing defendant's prior convictions or, should defendant testify, using defendant's prior convictions to impeach him. The parties agreed to stipulate to the two prior qualifying convictions without disclosing the nature of those convictions. After a hearing, the trial court determined defendant's two juvenile cases would not be introduced, but should defendant testify, the State could impeach him with the details of the two prior qualifying convictions. The parties also agreed to stipulate that they would play only relevant portions of the video from a police officer's body-worn camera and inform the jury the omitted portions had no evidentiary value.

¶ 6                                A. Jury Trial

¶ 7        Officer Bryan Fink of the Urbana Police Department testified he and another officer, Seth King, went to defendant's apartment, No. 305, to speak with him in connection with an unrelated investigation. After knocking on the door and receiving no answer, Fink spoke with Sharnee Thomas, who lived in the neighboring apartment, No. 303. Thomas informed Fink apartment No. 305 was occupied but she did not know the inhabitants. Fink and King left the building, and Fink observed defendant on Thomas's balcony. Fink and King returned to Thomas's apartment. Thomas was surprised to hear a person was on her balcony.

¶ 8            Defendant was sitting on a ledge connecting the balconies of apartment Nos. 303 and 305. A black backpack, black sweatshirt, and cellphone sat next to defendant. Defendant denied being Demarkus Diggs. Fink asked defendant if he had any weapons on him, and defendant responded no. Fink then asked if there were any weapons in the black backpack and defendant responded yes. Fink and King placed defendant in handcuffs for safety reasons.

¶ 9            King patted down defendant and located defendant's wallet, which contained an Illinois photo identification for Demarkus Diggs. Fink asked defendant what was in the black backpack, and defendant stated "a gun." Defendant confirmed the gun was loaded and had a round in the chamber. Fink put on gloves and removed a firearm with a laser sight attachment from the backpack.

¶ 10           Thomas testified she lived in apartment No. 303. When officers asked her about the resident of apartment No. 305, she informed them the apartment was occupied but she did not know the occupant. She did not know defendant and was not aware he was on her balcony.

¶ 11           Detective Richard Coleman testified he interviewed defendant after his arrest. Officers had located a receipt in defendant's pocket from Rural King. Defendant stated it was the receipt for a laser sight.

¶ 12           Detective Duane Smith testified there was no brand name on the receipt, only a model number. Smith conducted an internet search for the brand name of the device and found a device which matched the laser sight found on the firearm. The device had an identical model number to the receipt found in defendant's pocket.

¶ 13           At the close of the State's case, the trial court read the following stipulation to the jury:

"Ladies and gentlemen, I believe this may be the last stipulation. You are to consider this along with all of the other evidence. It relates to prior felony convictions.

The stipulation reads that the parties stipulate the defendant was previously convicted of two prior qualifying offenses under the armed habitual criminal statute."

¶ 14　　　　　Defendant chose not to testify and presented no other evidence.

¶ 15　　　　　Prior to closing arguments, the trial court informed the parties it may have erred when instructing the jury to consider the stipulation as to defendant's prior convictions along with all of the other evidence. Citing *People v. Cavette*, 2018 IL App (4th) 150910, the court stated, "[I]f the Court uses language like that when the stipulation is about the prior convictions which are the predicates for armed habitual criminal, it's improper because it unduly highlights the prior convictions for propensity when it was only introduced for a very limited purpose that it was the predicate offenses." The court and State suggested example limiting instructions, but the court determined it was up to the defense. The court requested defense counsel read *Cavette* and they would reconvene the next morning.

¶ 16　　　　　The next day, the trial court asked defense counsel, "[I]s there any suggestion for me at this point, or do we just let it rest?" Defense counsel responded, "I'm going to let it rest, Judge. I think at this point in time to bring anything up would just highlight it, and I'm not trying to do that. So I'm not asking for any other type of limiting instruction at this point."

¶ 17　　　　　The jury found defendant guilty of AHC and found the firearm had a laser sight attachment.

¶ 18　　　　　　　　　　　　B. Posttrial Motion

¶ 19        Defendant filed a motion for acquittal, or in the alternative, motion for a new trial. In the motion, defendant argued, in relevant part, (1) "[t]he Court erred in informing the jury to treat the stipulation to criminal convictions as any other evidence rather than giving the appropriate limiting instruction" and (2) "[t]rial counsel was ineffective in not recommending to the Court to give a limiting instruction per [*Cavette*]."

¶ 20        As to the limiting instruction issue, the court found:

> "[A]bout the stipulation, I think it is very clear it was error to not give some kind of a limiting—well, it was error for the court to say you can consider the priors along with all of the other evidence. There was no objection at the time by anybody, so I think it may be waived. I realized the mistake shortly thereafter. I raised the issue of *Cavette*. I discussed it with counsel. And [defense counsel] presumably thought about it, *** and spoke with her client about it, and *** next morning agreed that a limiting instruction would simply highlight it and made the tactical decision not to do it, to just, I think her words were, to let it rest."

The court denied the motion.

¶ 21                     C. Sentencing

¶ 22        Defendant's presentence investigation report (PSI) listed defendant's criminal history. Defendant had prior juvenile convictions for criminal trespass to a residence and resisting a peace officer, both Class 4 felonies. Defendant had two adult convictions for burglary, Class 2 felonies, and the convictions for residential burglary and aggravated robbery, both Class 1 felonies, used as prior qualifying convictions. Additionally, defendant had pending charges in three other cases.

¶ 23        Defendant's history showed he never met his father and his mother " 'moved around a lot.' " Defendant, who was 23, reported he last attended school in ninth grade and was expelled. Defendant could read and write " '[a] little bit' " and struggled in school. He had not obtained a high school diploma or general equivalency diploma.

¶ 24        Defendant's mental health history showed he had been diagnosed with attention-deficit/hyperactivity disorder, conduct disorder, cannabis abuse, poor concentration, and borderline intellectual functioning. He stated he first used cannabis when he was 13 years old, and he typically smokes cannabis every day. Defendant agreed drugs were a problem for him. Defendant reported he was currently suffering from "depression, anger control issues, family problems, anxiety, and sleep problems." Defendant had attempted suicide shortly before the PSI interview and stated several times during the interview, "I'm going to kill myself in here."

¶ 25        Lieutenant Jenna Good of the Champaign County Sheriff's Office testified defendant had received 53 disciplinary reports since he came into custody. The majority of the disciplinary reports occurred after defendant was found guilty. Disciplinary reports included defendant exposing himself to female staff members and masturbating, flooding his cell and surrounding cells, threatening officers, and attempting to break fire-suppression equipment. Defendant had also been placed on suicide watch several times. Defendant was housed in solitary confinement for the majority of his time in custody due to his behavior.

¶ 26        Defendant did not present any evidence in mitigation.

¶ 27        The State, focusing on defendant's extensive criminal history and deterrence, recommended a sentence of 30 years' imprisonment. Defense counsel highlighted defendant's limited education and mental health issues, recommending a sentence of 6 to 12 years' imprisonment.

¶ 28          Defendant made a statement in allocution, explaining he had recorded music and wanted to continue recording and also wanted to earn his high school diploma.

¶ 29          The trial court first addressed mitigating factors. Defendant was only 23 at the time and had two children he visited regularly, though there was no evidence he was paying child support. The court also considered defendant's mental health issues as a mitigating factor.

¶ 30          The trial court found there were "significant" aggravating factors. Even excluding defendant's prior qualifying offenses, defendant had a criminal record, and defendant had spent time in juvenile prison and on Treatment Alternatives to Street Crime probation. Defendant was also out on bond when he committed this offense. The court considered deterrence as a factor. As to whether defendant's conduct threatened harm, the court stated:

> "With respect to the offense itself, he was found with a gun in a backpack. Nobody knows if he was gonna use it. He was sitting out there watching people drive by. There's a potential for threat of harm. But I also heard a lot of aggravation today about his conduct pending the sentencing hearing where he was threatening harm. Whether he had executed it or not, he certainly threatened harm."

The court found as a "very serious" aggravating factor defendant's behavior in jail. The court highlighted the escalation of defendant's behavior after his conviction. The court found this weighed against defendant's rehabilitative potential. The court recognized defendant's "rough upbringing," stating, "It's sad. It's, it's just sad that he has a tough upbringing and he's got a lot of issues. He's undereducated, underemployed, substance abuse issues. He also has mental health issues." The court noted it was sympathetic to defendant's background, but defendant was refusing medication to treat his mental health issues. The court concluded, "I don't believe we

can say we've lost all rehabilitative potential or hope for him, but, at this point, it's pretty limited."

¶ 31        The trial court sentenced defendant to 20 years' imprisonment.

¶ 32        Defendant filed a motion to reconsider sentence, arguing the sentence was excessive. Defendant argued the trial court did not give enough consideration to defendant's limited education and mental health issues and overemphasized defendant's behavior while incarcerated and deterrence. The court denied defendant's motion to reconsider sentence.

¶ 33        This appeal followed.

¶ 34                            II. ANALYSIS

¶ 35        On appeal, defendant first argues the trial court erred where it instructed the jury to consider "along with all of the other evidence" the parties' stipulation to the two predicate offenses "under the armed habitual criminal statute." Second, defendant alternatively argues his trial counsel was ineffective for failing to request a limiting instruction. Finally, defendant argues his sentence was excessive. We address each argument in turn.

¶ 36                      A. Other-Crimes Instruction

¶ 37        In general, other-crimes evidence is not admissible merely to prove a defendant's propensity to commit crime. See Ill. R. Evid. 404(b) (eff. Jan. 1, 2011); *People v. Manning*, 182 Ill. 2d 193, 214 (1998). Relying on *Cavette*, 2018 IL App (4th) 150910, defendant contends the trial court erred by giving an incorrect instruction that the stipulated offenses should be considered "along with all of the other evidence" without a caution that the prior convictions must not be considered as evidence of his propensity to commit the charged crime. Defendant further argues the court erred by failing to cure the error and leaving the decision to cure up to

- 8 -

defense counsel. In the alternative, defendant argues his counsel was ineffective for failing to request a limiting instruction.

¶ 38                                    1. *Forfeiture*

¶ 39         The State argues defendant forfeited his claim by not objecting to the alleged error at trial.

¶ 40         "It is well settled that, to preserve an issue on appeal, a defendant must object to the purported error at trial and include it in his written posttrial motion." *People v. Glasper*, 234 Ill. 2d 173, 203 (2009). "This court's forfeiture rules exist to encourage defendants to raise issues in the trial court, thereby ensuring both that the trial court has an opportunity to correct any errors prior to appeal and that the defendant does not obtain a reversal through his or her own inaction." *People v. Denson*, 2014 IL 116231, ¶ 13.

¶ 41         Defendant acknowledges he did not object to the error at trial. However, defendant argues the trial court addressed "essentially" the same argument because the trial court brought attention to the error, the parties discussed the error, and defendant addressed the error in his posttrial motion. However, defendant cites no authority in support of his argument that this court should waive forfeiture. Defendant cites instead to *People v. Ealy*, 2015 IL App (2d) 131106, ¶ 41, where the defendant raised an objection, but the objection raised was not identical to the issue raised on appeal. In this case, defendant did not object at all. Accordingly, defendant has forfeited any such argument. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 42         Further, defendant argued in his reply brief that we should waive forfeiture because the "purpose" of the forfeiture rule has been fulfilled, as the trial court had a chance to review the claim. Again, defendant does not cite to authority in support of his argument but instead references other jurisdictions. Under Illinois law, "forfeiture rules exist to encourage

defendants to raise issues in the trial court, thereby ensuring *both* that the trial court has an opportunity to correct any errors prior to appeal *and* that the defendant does not obtain a reversal *through his or her own inaction*." (Emphases added.) *Denson*, 2014 IL 116231, ¶ 13. Here, where defendant seeks reversal based on his inaction, we cannot allow defendant to benefit from failing to object or offer a limiting instruction.

¶ 43　　　　　We note further, "[u]nder the invited-error doctrine, a defendant cannot complain of error that he or she induced the trial court to make, or to which he or she consented." *People v. Montes*, 2020 IL App (2d) 180565, ¶ 45. Invited error further creates an estoppel that precludes plain-error analysis. See *People v. Holloway*, 2019 IL App (2d) 170551, ¶ 44.

¶ 44　　　　　In this case, the trial court granted defense counsel the opportunity to offer a limiting instruction to correct any error in the court's instruction to the jury. Defense counsel had ample time to consider whether to request a limiting instruction and chose to "let it rest," stating she wished to avoid highlighting defendant's prior convictions and thus, consenting to the instruction as given.

¶ 45　　　　　　　　　　　　2. *Ineffective Assistance of Counsel*

¶ 46　　　　　To prevail on a claim on ineffective assistance of counsel, a defendant must show that (1) counsel's performance was objectively unreasonable and (2) it is reasonably probable that, but for counsel's errors, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984); *People v. Johnson*, 2013 IL App (2d) 110535, ¶¶ 41, 57. Put another way, "a defendant must show both that counsel's representation was deficient and that the asserted deficiency in counsel's performance prejudiced the defendant." *People v. Barrow*, 195 Ill. 2d 506, 519 (2001). A failure to establish either prong of the

*Strickland* test is fatal to a claim of ineffective assistance. *People v. Peterson*, 2017 IL 120331, ¶ 79.

¶ 47 Defendant argues the evidence against him was not overwhelming, and therefore defendant faced a high risk of prejudice from the missing limiting instruction. We disagree. "In determining whether the evidence adduced at trial was close, a reviewing court must evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case." *People v. Sebby*, 2017 IL 119445, ¶ 53.

¶ 48 "A person commits the offense of being an armed habitual criminal if he or she *** possesses *** any firearm after having been convicted" of two or more qualifying offenses. 720 ILCS 5/24-1.7(a) (West 2020). Because of the stipulation as to defendant's prior qualifying convictions, there was only one disputed factual issue pertinent here: whether defendant possessed a firearm. See *id.* Possession of a firearm may be actual or constructive. *People v. Brown*, 327 Ill. App. 3d 816, 824 (2002). The State may establish constructive possession by showing the defendant (1) had knowledge of the presence of the weapon and (2) "exercised immediate and exclusive control over the area where the weapon was found." *Id.*

¶ 49 When police officers made contact with defendant, he was sitting on the ledge of Thomas's balcony with a black backpack sitting next to him. Thomas testified she did not know defendant and was unaware he was on her balcony. Defendant denied having any weapons on him, but when Officer Fink asked if there were any weapons in the backpack, defendant responded yes. Defendant responded to Officer Fink's questions, informing him there was a gun in the bag, it was loaded, and there was a round in the chamber. Defendant never denied owning the bag and was uniquely aware of its contents. The firearm had a laser sight attachment and defendant informed Detective Coleman the receipt found in his pocket was the receipt from the

purchase of the laser sight. Therefore, defendant had knowledge of the firearm and exclusive possession of the backpack where the firearm was located.

¶ 50        Given the strength of the evidence that defendant possessed a firearm, and the undisputed fact that he committed the predicate offenses, there is no reasonable probability that a limiting instruction on the latter element would have changed the result at trial. Thus, we reject defendant's claim of ineffective assistance of counsel.

¶ 51                              B. Sentence

¶ 52        Defendant next contends that his sentence was excessive. He argues that the trial court gave undue weight to aggravating factors and too little weight to mitigating factors. Specifically, defendant argues the court (1) gave undue weight to (a) the seriousness of the offense, (b) the threat of harm, and (c) defendant's conduct in custody and (2) failed to consider defendant's (a) troubled background, (b) rehabilitative potential, (c) mental health and cognitive issues, and (d) history of substance abuse.

¶ 53        "[T]he trial court is in the best position to fashion a sentence that strikes an appropriate balance between the goals of protecting society and rehabilitating the defendant." *People v. Risley*, 359 Ill. App. 3d 918, 920 (2005). Thus, we may not disturb a sentence within the applicable sentencing range unless the trial court abused its discretion. *People v. Stacey*, 193 Ill. 2d 203, 209-10 (2000). A sentence is an abuse of discretion only if it is at great variance with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. *Id.* at 210. We may not substitute our judgment for that of the trial court merely because we might have weighed the pertinent factors differently. *Id.* at 209.

¶ 54        In determining an appropriate sentence, relevant considerations include the nature of the crime, the protection of the public, deterrence and punishment, the defendant's

rehabilitative prospects, and youth. *People v. Kolzow*, 301 Ill. App. 3d 1, 8 (1998). The weight to be attributed to each factor in aggravation and mitigation depends upon the circumstances of the case. *Id.* "The seriousness of the crime is the most important factor in determining an appropriate sentence, not the presence of mitigating factors." *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002). The trial court need not recite all the factors before imposing a sentence. *People v. Spicer*, 379 Ill. App. 3d 441, 469 (2007). It is presumed that the court considered all the factors unless the record indicates the contrary. *Id.*

¶ 55        Here, the sentencing range for AHC, a Class X felony, was 6 to 30 years' incarceration. 720 ILCS 5/24-1.7(b) (West 2020); 730 ILCS 5/5-4.5-25 (West 2020). Because of the laser sight attached to the firearm, defendant was subject to extended-term sentencing of 6 to 60 years. See 730 ILCS 5/5-5-3.2(b)(6) (West 2020). The trial court, recognizing the seriousness of the offense, the need for deterrence, defendant's criminal history, and defendant's demonstrated lack of rehabilitative potential, appropriately sentenced defendant to a less than median term.

¶ 56        Defendant claims that the trial court failed to consider mitigating evidence such as defendant's troubled background, mental health and cognitive issues, and history of substance abuse. But as the record shows, the court did not fail to consider mitigating factors, stating, "It's sad. It's, it's just sad that he has a tough upbringing and he's got a lot of issues. He's undereducated, underemployed, substance abuse issues. He also has mental health issues." Rather, the court considered this evidence and gave it no weight based on defendant's behavior in jail and refusal to accept treatment, alongside the above-mentioned aggravating factors. The court was entitled to make factual findings on defendant's character and rehabilitative potential based on the evidence presented, and we will not reweigh the evidence on appeal.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.