NOTICE
Decision filed 03/13/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250087-U

NO. 5-25-0087

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 21-CF-569 |
| | ) | |
| DEMARKUS A. DIGGS, | ) | Honorable |
| | ) | Randall B. Rosenbaum, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE CATES delivered the judgment of the court.
Justices Barberis and Bollinger concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court did not err in dismissing the defendant's motion for leave to file a successive postconviction petition, where the motion did not demonstrate cause and prejudice for not raising its claims sooner. Because no argument to the contrary would have arguable merit, the defendant's appellate counsel is granted leave to withdraw, and the judgment of the circuit court is affirmed.

¶ 2    The defendant, Demarkus A. Diggs, is serving a sentence of 20 years in prison after being convicted of the offense of armed habitual criminal, a Class X felony, in violation of section 24-1.7(a) of the Criminal Code of 2012 (720 ILCS 5/24-1.7(a) (West 2020)). On December 26, 2024, he filed a motion for leave to file a successive postconviction petition. The trial court denied the motion, and the defendant appealed from the denial. The Office of the State Appellate Defender (OSAD) was appointed as his appellate counsel. OSAD has concluded that this appeal lacks arguable merit and, on that basis, has filed a motion for leave to withdraw as counsel, pursuant to

1

*Pennsylvania v. Finley*, 481 U.S. 551 (1987), along with a supporting memorandum of law. OSAD properly served the defendant with notice. This court gave the defendant the opportunity to file a response to OSAD's motion, but the defendant has not filed a response. Having reviewed OSAD's *Finley* motion and memorandum, and having examined the entire record on appeal, this court agrees with OSAD's assessment of this appeal.

¶ 3                                 I. BACKGROUND

¶ 4     On May 19, 2021, the defendant was charged, by information, with one count of armed habitual criminal, a Class X felony, in violation of section 24-1.7(a) of the Criminal Code of 2012 (720 ILCS 5/24-1.7(a) (West 2020)). The information alleged that on May 18, 2021, the defendant "knowingly possessed a firearm *** after having previously been convicted of" aggravated robbery and residential burglary. The case proceeded to a jury trial that began on August 10, 2021.

¶ 5     Sharnee Thomas testified that on May 18, 2021, she was at her residence in Urbana when she thought she heard someone knocking on her door. She testified that she opened the door and saw police officers knocking on her neighbor's door. Thomas testified that an officer asked her if someone lived in the neighboring apartment. She testified that she told the officer that someone did, but that she did not know the person. She testified that she closed her door, but that officers soon returned and told her that they had been informed that someone was on her outdoor balcony. Thomas testified that she did not know someone was on the balcony, that she never used the balcony, and that she allowed police to access the balcony through her apartment.

¶ 6     Officer Bryan Fink testified that he had been employed by the Urbana Police Department for about four and a half years. He testified that on May 18, 2021, he and another officer were conducting an investigation and wanted to speak with the defendant. He testified that the officers went to the address they had for the defendant and knocked on his door. He testified that a neighbor

came out of her apartment and told them that someone lived in the other apartment. Fink testified that when no one answered the door at the defendant's apartment, the officers began to leave, but that as they reached "the front of the building in the street area," Fink "happened to look up *** at the third-floor balcony," where he saw a man he recognized as the defendant.

¶ 7 Fink testified that officers returned to the defendant's apartment and knocked on his neighbor's door. He testified that Thomas opened the door, told Fink that she did not know someone was on her balcony, and allowed the officers access to the balcony through her apartment. Fink testified that there was "a ledge" that separated the balconies between the neighboring apartments, and that he observed the defendant sitting on that ledge. He testified that the defendant had "a black bag *** sitting next to him." Fink testified that he called the defendant by the defendant's first name, but that the defendant denied that was his name. Fink testified that because the defendant was "trying to scoot" away from Thomas's balcony toward his balcony, the officers "grabbed" the defendant, who then came down from the balcony on his own.

¶ 8 Fink testified that the defendant denied having any weapons on his person, but that when asked if there were any weapons in the black bag, the defendant answered that there were. Fink testified that the officers then handcuffed the defendant for safety reasons. He testified that the defendant eventually told the officers that the black bag contained a loaded gun. Fink testified that he put on gloves, then opened the black bag and found a pistol that he later identified as a Taurus 9-millimeter, with "a weapon-mounted light *** affixed to the rail underneath." Fink testified that he was wearing a body camera during the incident, then authenticated a DVD that contained a video and audio recording downloaded from his body camera. The DVD was admitted into evidence without objection, then published to the jury. Because it is not relevant to the issues raised in this appeal, we do not discuss the DVD in detail.

3

¶ 9     Thereafter, Fink testified that he found a loaded magazine in the gun, and a round of ammunition in the chamber. He made an in-court identification of the defendant as the person he interacted with during the incident. He then authenticated the black bag, the pistol, the light that was attached to the pistol, the ammunition magazine that was inserted into the pistol, and the 9-millimeter rounds of ammunition that were found in the magazine, all of which were admitted into evidence and published to the jury. Fink described the attachment as "a laser/light" that could "act as a light, a flashlight, or a red-dot laser." He testified that the pistol was "a real firearm," not an airsoft pistol or BB pistol. He testified that the rounds of ammunition were "live rounds *** not dummy bullets or fake bullets."

¶ 10    On cross-examination, Fink agreed that when he removed the pistol from the black bag, the pistol's "safety was engaged." He agreed that none of the items recovered from the bag were "ever swabbed for DNA or checked for fingerprints or sent to the crime lab." He testified that he did not test the laser light to see if it was operational, and that he did not know if anyone else tested it. He testified that the pistol was test fired by police, but he did not know which officer did the testing.

¶ 11    Detective Richard Coleman testified that he had been employed by the Urbana Police Department for approximately 11 years, and had worked for other law enforcement agencies for approximately 11 years prior to that. He testified that on May 18, 2021, he interviewed the defendant, whom Coleman identified in court. He testified that the interview was recorded, then he authenticated a DVD that contained the recording. The DVD was admitted into evidence and published to the jury. Because it is not relevant to the issues raised in this appeal, we do not discuss this DVD in detail either.

4

¶ 12    Thereafter, Coleman testified that when the defendant was taken to jail, a receipt from Rural King was found in the defendant's pocket. Coleman testified that the defendant told Coleman that the receipt was for the purchase of the laser light. Coleman testified that the receipt was dated May 17, 2021. The receipt was admitted into evidence without objection, but was not published to the jury at that time.

¶ 13    Investigator Duane Smith testified that he had been employed by the Urbana Police Department for 23 years. He testified that on May 18, 2021, he and other officers executed a search warrant at the defendant's apartment. Smith made an in-court identification of the defendant. Smith authenticated the Rural King receipt and testified that he used the information on the receipt to see if he could tie the receipt to the laser light that had been found on the weapon in the defendant's bag. He testified that subsequently he was able to do so.

¶ 14    Following Smith's testimony, the State presented a stipulation from the parties and asked the trial court to read the stipulation to the jury. The trial court stated to the jury:

> "Ladies and gentlemen, I believe this may be the last stipulation. You are to consider this along with all of the other evidence. It relates to prior felony convictions. The stipulation reads that the parties stipulate the defendant was previously convicted of two prior qualifying offenses under the armed habitual criminal statute."

After the stipulation was read to the jury, the State rested. The defendant rested as well. The jury was dismissed for the day, with deliberations to begin the following morning after closing arguments. Outside the presence of the jury, the defendant moved for a directed verdict. The trial court denied the defendant's motion. The parties then discussed which exhibits would be sent to the jury. The trial court agreed with the defendant that the stipulations would not be sent to the jury.

¶ 15    After the jury instructions conference, the trial court raised another issue. The trial court stated that it was concerned that it may have been error for the trial court to tell the jury, in the stipulation quoted above, to consider the stipulation to the previous convictions "along with all of the other evidence," because under existing precedent, doing so "unduly highlights the prior convictions, for propensity, when it was only introduced for a very limited purpose that it was the predicate offenses." The trial court asked counsel for the defendant if she wished for the trial court to give additional instructions to the jury regarding the stipulation. The parties decided to revisit the issue when they convened the next morning for closing arguments and deliberations.

¶ 16    The following morning, counsel for the defendant stated, with regard to the stipulation issue, "I'm going to let it rest, Judge. I think at this point in time to bring anything up would just highlight it, and I'm not trying to do that." She added that she was "not asking for any other type of limiting instruction at this point." Following deliberations, the jury found the defendant guilty of the offense of armed habitual criminal, and further found that the State had proven that when committing the offense, the defendant had "used a firearm with a laser sight attached to it." The defendant filed a posttrial motion, which was denied.

¶ 17    At the defendant's sentencing hearing, the State presented, as evidence in aggravation, the testimony of Lieutenant Jenna Good of the Champaign County sheriff's office. Good testified that her duties included "classification for housing of inmates and disciplinary reports." She testified that she was familiar with the defendant, whom she identified in the courtroom. She testified that during the defendant's incarceration that began on May 18, 2021, the defendant had "received 53 disciplinary reports," for "not listening to staff, masturbation, hitting the lights and/or fire extinguishers." She testified that "the majority of [the defendant's] disciplinary reports came after his" conviction in the present case. Good testified that the defendant had "been placed in a restraint

6

chair" seven times since his conviction. Counsel for the defendant did not present evidence in mitigation, but she argued that the trial court should consider the defendant's limited education, untreated mental health and substance abuse issues, and "borderline intellectual functioning."

¶ 18 Following arguments from the parties, and a brief statement from the defendant, the trial court stated that there was "some mitigation" present, including the issues argued by the defendant's counsel. The trial court stated that there was "significant aggravation *** as well," noting the defendant's prior criminal history beyond the predicate offenses in the current case, and his conduct in jail while awaiting sentencing. The trial court stated that although the court did not believe the defendant had "lost all rehabilitative potential," the court found "at this point, it's pretty limited." The trial court thereafter sentenced the defendant to 20 years in prison. The defendant filed a motion to reconsider sentence, which the trial court denied after a hearing.

¶ 19 The defendant filed a direct appeal in which he claimed that (1) the trial court erred in reading to the jury the stipulation that instructed them to consider the stipulation "along with all of the other evidence," because that allowed the jury to consider his predicate offenses for propensity purposes, (2) his trial counsel was ineffective for not requesting a limiting instruction regarding the stipulation, and (3) his sentence was excessive. *People v. Diggs*, 2022 IL App (4th) 210606-U, ¶ 2. The appellate court affirmed. *Diggs*, 2022 IL App (4th) 210606-U, ¶ 2. The appellate court concluded that the defendant had forfeited his first contention because he had not objected to it in the trial court. *Diggs*, 2022 IL App (4th) 210606-U, ¶ 41. The court added that the doctrine of invited error also barred the defendant's first contention. *Diggs*, 2022 IL App (4th) 210606-U, ¶¶ 43-44. The court ruled that the defendant's ineffective assistance of counsel argument failed because the evidence of the defendant's guilt was overwhelming, and he therefore could not demonstrate that any prejudice resulted from the alleged deficiencies in counsel's

7

performance. *Diggs*, 2022 IL App (4th) 210606-U, ¶ 50. The court rejected the defendant's excessive sentencing argument as well, stating that the record showed that the trial court considered factors in mitigation as well as factors in aggravation, and that the resulting sentence was not erroneous. *Diggs*, 2022 IL App (4th) 210606-U, ¶¶ 55-56.

¶ 20    On January 5, 2023, the defendant filed a handwritten letter, along with a standard *pro se* postconviction petition form and a motion for leave to file a successive postconviction petition. The trial court construed these documents together as the defendant's first postconviction petition. The trial court summarily dismissed the petition, ruling that each claim presented therein was frivolous and patently without merit because the claims were conclusory and unsupported by facts, and that some claims were "completely contradicted by the record." With regard to the defendant's claims regarding his mental health at the time of his trial and subsequent sentencing, the trial court expressly found that there was no evidence in the trial court that the defendant was not fit during any of the proceedings therein. The defendant did not appeal the summary dismissal of the petition.

¶ 21    On December 26, 2024, the defendant filed a motion for leave to file a successive postconviction petition. On January 2, 2025, the trial court denied the motion, stating that the defendant "failed to meet the cause and prejudice tests" required for the filing of a successive postconviction petition. The trial court concluded that some of the claims raised in the motion also were raised in the defendant's direct appeal, and in his earlier postconviction petition, and accordingly were barred by the doctrine of *res judicata*. The trial court further concluded that the defendant's claims were conclusory and not supported by facts.

¶ 22    On January 31, 2025, the defendant again filed a motion for leave to file a successive postconviction petition. Included at the conclusion of this motion was the statement that the defendant "was told to notify the circuit court for [his] appeal because [his] motion to proceed on

8

successive [postconviction] petition was denied on [January 2, 2025]," as well as a statement that the defendant wished to have counsel appointed to represent him. On February 7, 2025, the trial court denied the defendant's second motion for leave to file a successive postconviction petition, for the same reasons the trial court denied the December 26, 2024, motion. Also on February 7, 2025, a notice of appeal was filed on behalf of the defendant, which was thereafter amended by appellate counsel to clarify that the January 2, 2025, order was the order being appealed.

¶ 23                                    II. ANALYSIS

¶ 24    The defendant appeals the trial court's January 2, 2025, order that dismissed his December 26, 2024, motion for leave to file a successive postconviction petition. As noted previously, OSAD has filed a *Finley* motion to withdraw as counsel. In the legal memorandum that accompanies the motion, OSAD raises a single potential issue: whether it was error for the trial court to deny the defendant's motion. OSAD lists the four allegations in the defendant's motion, then explains why it believes each claim fails to establish cause and prejudice, as required for the filing of a successive postconviction petition. For the reasons that follow, we agree with OSAD.

¶ 25    The Post-Conviction Hearing Act (Act) provides a means by which a criminal defendant may assert that, in the proceedings that resulted in the defendant's conviction, there occurred a substantial denial of the defendant's rights under the United States Constitution, the Illinois Constitution, or both. *People v. Evans*, 2013 IL 113471, ¶ 10 (citing 725 ILCS 5/122-1(a)(1) (West 2008)). Broad, conclusory allegations are not permissible under the Act. *People v. Delton*, 227 Ill. 2d 247, 258 (2008). Moreover, a petition filed under the Act must have attached affidavits, records, or other evidence supporting its allegations, or must state why they are not attached. 725 ILCS 5/122-2 (West 2022). The Act allows the filing of only one postconviction petition without leave of court and expressly states that any claims not raised in the original petition or an amended

9

petition are waived. *Evans*, 2013 IL 113471, ¶ 10. As a result, a defendant must obtain leave of court to initiate a successive postconviction proceeding. *Evans*, 2013 IL 113471, ¶ 10. Leave of court is granted only if the defendant establishes cause for the defendant's failure to bring the claims in the original or amended petition, and establishes that prejudice to the defendant resulted from that failure. *Evans*, 2013 IL 113471, ¶ 10. To establish cause, a defendant must identify an objective factor that impeded the defendant's ability to raise a specific claim in the initial postconviction petition proceedings. *Evans*, 2013 IL 113471, ¶ 10. To demonstrate prejudice, the defendant must show that the claim not raised earlier so infected the trial that the defendant's resulting conviction or sentence violated the due process rights of the defendant. *Evans*, 2013 IL 113471, ¶ 10. In addition, the doctrine of *res judicata* bars a defendant from raising in a postconviction petition issues that were actually decided in the defendant's direct appeal. *People v. Clark*, 2023 IL 127273, ¶ 41. This court reviews *de novo* a trial court's denial of leave to file a successive postconviction petition. *People v. Parker*, 2019 IL App (5th) 150192, ¶ 17.

¶ 26     The first allegation in the defendant's motion is that his trial counsel was ineffective "by failing to request limiting instructions prior to trial." OSAD posits that with this allegation, the defendant is attempting to argue that counsel was ineffective because counsel did not request a limiting instruction with regard to the stipulation discussed above. As OSAD notes, however, this issue was raised and decided in the defendant's direct appeal, and therefore, under principles of *res judicata*, cannot be raised again. *Clark*, 2023 IL 127273, ¶ 41. As OSAD also correctly notes, to the extent the first allegation in the defendant's motion refers to some other, unspecified limiting instruction or instructions, the allegation is broad, conclusory, and unsupported by facts, which renders it impermissible under the Act. *Delton*, 227 Ill. 2d at 258. Under either line of reasoning,

10

the defendant's first allegation is without merit. Moreover, the motion contains no attempt by the defendant to show cause and prejudice with regard to this allegation.

¶ 27 The second allegation in the defendant's motion is that trial counsel was ineffective "by violating due process to a fair legal trial." As OSAD correctly points out, this allegation is broad, conclusory, and unsupported by facts. Accordingly, it does not support a claim under the Act. *Delton*, 227 Ill. 2d at 258. In addition, as with the first allegation, the motion contains no attempt by the defendant to show cause and prejudice with regard to this second allegation.

¶ 28 The third allegation in the defendant's motion is that "more aggravation was used against [the] defendant than evidence and criminal history and current charge." As OSAD notes, this appears to be an excessive sentencing argument. However, an excessive sentencing argument was raised and decided in the defendant's direct appeal, and therefore, *res judicata* bars reconsideration of that claim. *Clark*, 2023 IL 127273, ¶ 41. To the extent the defendant is attempting to raise a different excessive sentencing argument, or some other, unspecified argument, the allegation is broad, conclusory, and unsupported by facts, which renders it impermissible under the Act. *Delton*, 227 Ill. 2d at 258. Likewise, the motion contains no attempt by the defendant to show cause and prejudice with regard to this allegation.

¶ 29 The final allegation in the defendant's motion is that trial counsel was ineffective because counsel "failed to request [a] psychiatric evaluation knowing that [the defendant] had mental illness problems." The defendant's motion contains no attempt to show cause and prejudice with regard to this allegation. As OSAD correctly notes, the trial court addressed a similar contention in the defendant's first postconviction petition and expressly found that there was no evidence in the trial court that the defendant was not fit during any of the proceedings therein. The defendant did not appeal the summary dismissal of his first postconviction petition. Thus, this allegation is

11

barred and cannot be raised in a successive postconviction petition. See, *e.g.*, *People v. English*, 403 Ill. App. 3d 121, 131 (2010) (issue raised and decided on the merits in first postconviction petition may not be raised again in successive postconviction petition). In addition, the defendant's final allegation is broad, conclusory, and unsupported by facts. Therefore, it is not permissible under the Act. *Delton*, 227 Ill. 2d at 258.

¶ 30                                    III. CONCLUSION

¶ 31     This court's independent examination of the entire record establishes that this appeal does not present any issues of arguable merit. Therefore, the motion of appointed counsel to withdraw is granted, and the judgment of the circuit court of Champaign County is affirmed.


¶ 32     Motion granted; judgment affirmed.